# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| In Re: | |
| CESAR L. ROJO | Case No. 1:13-bk-41746 |
| Debtor. | Chapter 13 |
| CESAR L. ROJO, individually, and behalf of all other similarly situated, | Honorable LaShonda A. Hunt |
| Plaintiff | Adversary No. 1:19-ap-_____ |
| v. | |
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, | |
| Defendant. | |

## ADVERSARY CLASS ACTION COMPLAINT

**NOW COMES** Debtor-Plaintiff, CESAR L. ROJO, individually, and on behalf of all others similarly situated, by and through his undersigned counsel, and pursuant to Fed. R. Bankr. P. 7023, Fed. R. Bankr. P. 3002.1, and 11 U.S.C. §105, complaining of Defendant JPMORGAN CHASE BANK, NATIONAL ASSOCIATION as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a), and Local Rule 40.3.1.

2.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

1

3.      This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (L), and (O).

4.      Pursuant to Fed. R. Bankr. P. 7008(a), Plaintiff states that to the extent the Court

determines that any portion of this complaint is non-core, Plaintiff consents to the entry of a final

order or judgment in this adversary proceeding by the bankruptcy judge if it is determined that the

bankruptcy judge, absent consent of the parties, cannot enter a final order or judgment consistent

with Article III of the United States Constitution.  Further, to the extent that any court determines

that the Bankruptcy Court does not have the authority to enter a final judgment on any cause of

action set forth herein, Plaintiff requests that the Bankruptcy Court issue a report and

recommendation for a judgment to the United States District Court for the Northern District of

Illinois on any such cause of action.

## PARTIES

5.      CESAR L. ROJO ("Plaintiff") is a natural person, over 18-years-of-age, who at all

times relevant resided in this judicial district.

6.      JPMORGAN CHASE BANK, NATIONAL ASSOCIATION ("Defendant") is a

prominent national banking institution that originates and services mortgage loans. Defendant

maintains its headquarters in Columbus, Ohio and regularly conducts business in this judicial

district and throughout the United States.

7.      Defendant is a highly sophisticated publicly traded banking institution that

regularly participates in bankruptcy proceedings nationwide.

## NATURE OF THE ACTION

8.      Plaintiff is one of many victims of Defendant's systematic practice of violating the

terms of confirmed Chapter 13 plans. Specifically, as set forth below, Defendant systematically

misapplies post-petition mortgage payments, ultimately causing bankruptcy debtors to fall into a default status on the their mortgage loans as soon as the bankruptcy case is completed.

9. As a result of Defendant's practices, Plaintiff and other bankruptcy debtors were never appropriately considered current after the successful completion of their Chapter 13 plans, and thus never received the fresh start contemplated by the Bankruptcy Code.

## FACTUAL ALLEGATIONS

10. On May 24, 2010, Plaintiff executed a mortgage ("subject mortgage") in favor of Wintrust Mortgage Corporation ("Wintrust").

11. The subject mortgage secured the purchase of Plaintiff's principal residence located at 7658 Springbrook Drive, Plainfield, Illinois 60586 ("subject property").

12. The subject mortgage secured the repayment of a mortgage loan in the amount of $171,830.00 issued to Plaintiff to fund the purchase of the subject property ("subject loan").

13. On February 1, 2012, Plaintiff defaulted on the subject loan by failing to make the monthly mortgage payments.

14. On March 9, 2012, Wintrust assigned the subject loan and mortgage to Defendant.

15. On February 4, 2013, Defendant initiated mortgage foreclosure proceedings against Plaintiff and the subject property in the Circuit Court of Kendall County ("foreclosure case").

16. On July 29, 2013, a judgment of foreclosure was entered in favor of Defendant in the foreclosure case.

17. On October 25, 2013, Plaintiff filed a Chapter 13 bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois, case No. 13-41746. [Dkt. 1].

18. Also on October 25, 2013, Plaintiff filed a Chapter 13 Plan. [Dkt. 8].

19.    Plaintiff's Chapter 13 plan proposed to cure the default on the subject loan while making the ongoing payments on the subject loan as they became due. *Id.*

20.    On January 30, 2014, Plaintiff filed a Modified Chapter 13 Plan. [Dkt. 24].

21.    Plaintiff's Modified Plan also proposed to cure the default on the subject loan while making the ongoing payments on the subject loan as they became due. *Id.*

22.    Specifically, Plaintiff's Modified Chapter 13 provided:

**Section C** *Direct payment of claims by debtor***:**

The debtor will make current monthly payments, as listed in debtor's Schedule J – increased or decreased as necessary to reflect changes in variable interest rate, escrow requirements, collection costs, or similar matters – directly to the following creditors holding claims secured by a mortgage on the debtor's real property:

Creditor: JP Morgan Chase Bank, N.A., monthly payment, $1,604.00

**Section E** *Disbursements by the trustee***:**

The trustee shall disburse payments received from the debtor under this plan as follows:

5. *Mortgage arrears.*  Payable as set forth below, regardless of contrary proofs of claim, except that the arrears payable may be reduced either with the consent of the mortgagee or by court order, entered on motion of the debtor with notice to the trustee and the mortgagee.  Any such reduction shall be effective 14 days after either the trustee's receipt of a notice of reduction consented to by the mortgagee or the entry of a court order reducing the arrearage.

(a) To creditor JP Morgan Chase Bank, N.A., arrears of $30,755.00 payable monthly from available funds, pro rata with other mortgage arrears, ■ without interest /or/ □ with interest at an annual percentage rate of _____%.  These arrearage payments, over the term of the plan, are estimated to total $30,755.00.

23.    On February 2, 2014, Plaintiff's Modified Chapter 13 plan was served upon Defendant by the Bankruptcy Noticing Center. [Dkt. 25].

24.    Defendant did not object to Plaintiff's Modified Chapter 13 Plan.

4

25.    On February 7, 2014, the Bankruptcy Court confirmed Plaintiff's Modified Chapter 13 plan ("Confirmed Plan").  [Dkt. 26].

26.    As set forth in the Confirmed Plan, the ongoing mortgage payments to Defendant were $1,604 per month. [Dkt. 24].

27.    On March 4, 2014, Defendant filed a proof of claim (Claim 8-1) in the amount of $198,935.05. *See* Claim 8-1.

28.    In its proof of claim, Defendant asserted mortgage arrears in the amount of $37,118.14. *Id.*

29.    Notably, the arrears claimed in Defendant's proof of claim ($37,118.14) was $6,363.14 more than the arrears provided for in the Confirmed Plan ($30,755.00).

30.    On January 7, 2015, Defendant filed a Notice of Mortgage Payment Change, which reflected an increase of the monthly mortgage payment from $1,604.43 to $1,624.46, effective February 1, 2015.[1] *See* Claims Register, Claim 8-1.

31.    On December 17, 2015, Defendant filed a Notice of Mortgage Payment Change, which reflected an increase of the monthly mortgage payment from $1,624.46 to $1,633.48, effective February 1, 2016. *See* Claims Register, Claim 8-1.

32.    Starting in July 2016, Defendant started sending monthly statements to Plaintiff seeking payment in excess of the monthly mortgage payment set forth in the Confirmed Plan and subsequent Notices of Mortgage Payment Change.

---

[1] The Notice of Mortgage Payment Changed included a mortgage statement which erroneously stated that Plaintiff's mortgage payment was increasing from $962.23 to $1,624.46. However, according to the proof of claim filed by Defendant, the monthly mortgage payment beginning 11/01/2013 was $1,604.43. Up to the time that Defendant filed its Notice of Mortgage Payment Change, Plaintiff was making monthly payments of $1,604.43 (includes principal, interest, and escrow) per the amount reflected in Defendant's proof of claim.

33.     On or about July 1, 2016, Defendant sent Plaintiff a mortgage statement stating a "Total Amount Due" of $3,266.96 and that Defendant was holding $1,316.34 in "Unapplied Funds" (suspense). Notably, the mortgage statement did not allege that Plaintiff was in default on his post-petition mortgage payments.

34.     On or about August 1, 2016, Defendant sent Plaintiff a mortgage statement stating a "Total Amount Due" of $3,266.96 and that Defendant was holding $1,316.34 in "Unapplied Funds" (suspense). Notably, the mortgage statement did not allege that Plaintiff was in default on his post-petition mortgage payments.

35.     On or about September 1, 2016, Defendant sent Plaintiff a mortgage statement stating a "Total Amount Due" of $3,266.96 and that Defendant was holding $1,345.39 in "Unapplied Funds" (suspense). Notably, the mortgage statement did not allege that Plaintiff was in default on his post-petition mortgage payments.

36.     On or about December 1, 2016, Defendant sent Plaintiff a mortgage statement stating that the subject loan had an "Unapplied Balance" (suspense) of $2,341.30. Notably, the mortgage statement did not allege that Plaintiff was in default on his post-petition mortgage payments.

37.     On December 14, 2016, Defendant filed a Notice of Mortgage Payment Change, which reflected an increase of the monthly mortgage payment from $1624.46 to $1,704.52, effective February 1, 2017. *See* Claims Register, Claim 8-1.

38.     On or about January 3, 2017, Defendant sent Plaintiff a mortgage statement stating a "Total Amount Due" of $4,971.48 and that Defendant was holding $2,882.88 in "Unapplied Funds" (suspense). Notably, the mortgage statement did not allege that Plaintiff was in default on his post-petition mortgage payments.

39.    Throughout 2017, Defendant continued to send Plaintiff correspondences that sought an amount in excess of the monthly mortgage payment set forth in the Confirmed Plan and subsequent Notices of Mortgage Payment Change.

40.    Many of these correspondences demonstrated that Defendant was not properly applying the payments made by Plaintiff, but instead holding them as "Unapplied Funds" (suspense).

41.    For example, the February 2017 mortgage statement indicated that Defendant was holding $1,838.04 in "Unapplied Funds" despite the fact that the unapplied funds were sufficient to cover a monthly mortgage payment of $1,704.52. Moreover, the mortgage statement stated a "Total Amount Due" of $5,042.52. Notably, the mortgage statement did not allege that Plaintiff was in default on his post-petition mortgage payments.

42.    The March 2017 mortgage statement indicated that Defendant was holding $2,417.66 in "Unapplied Funds" despite the fact that the unapplied funds were sufficient to cover a monthly mortgage payment of $1,704.52. Moreover, the mortgage statement stated a "Total Amount Due" of $5,113.56. Notably, the mortgage statement did not allege that Plaintiff was in default on his post-petition mortgage payments.

43.    The April 2017 mortgage statement indicated that Defendant was holding $3,068.32 in "Unapplied Funds" despite the fact that the unapplied funds were sufficient to cover a monthly mortgage payment of $1,704.52. Notably, the mortgage statement did not allege that Plaintiff was in default on his post-petition mortgage payments.

44.    Throughout 2017, Defendant continued to send Plaintiff mortgage statements indicating that Defendant was holding "Unapplied Funds" that were sufficient to cover the monthly

mortgage payment and stating a "Total Amount Due" that was in excess of the monthly mortgage payment set forth in the Confirmed Plan and subsequent Notices of Mortgage Payment Change.

45.     On or about December 1, 2017, Defendant sent Plaintiff a mortgage statement inexplicably stating that the monthly mortgage payment was now $2,019.62, up from $1,704.52.

46.     Defendant did not notify the Plaintiff, the Plaintiff's counsel, the Chapter 13 Trustee, or the Bankruptcy Court of this payment increase as required by Fed. R. Bankr. P. 3002.1(b).

47.     After receiving the correspondence from Defendant reflecting the payment increase to $2,019.62, Defendant sent subsequent statements to Plaintiff indicating that the monthly payment amount is $1,621.49, thus causing Plaintiff significant confusion and uncertainty regarding the amount he needed to pay to stay current on his post-petition mortgage payments.

48.     Erring on the side of caution, Plaintiff made numerous payments in the amount of $2,019.62 when he was able to afford it.

49.     On January 3, 2018, one month after sending Plaintiff a mortgage statement indicating that the monthly payment increased to $2,019.62, Defendant filed a Notice of Mortgage Payment Change, which reflected a decrease of the monthly mortgage payment from $1,704.52 to $1,621.49, effective February 1, 2018.

50.     On or about March 8, 2018, Defendant sent Plaintiff a mortgage statement indicating that the subject loan had an "Unapplied Balance" of $3,331.32, which was sufficient to cover a monthly mortgage payment of $1,621.49. Notably, the mortgage statement did not allege that Plaintiff was in default on his post-petition mortgage payments.

51.     On or about April 9, 2018, Defendant sent Plaintiff a mortgage statement which reflected a "Total Unpaid" amount of **$19,001.81** and a "Total Payment Amount" due of **$20,623.30**. (emphasis in original). The statement further reflected that (1) there was an "Unapplied Balance of $1,981.59 and (2) the "Current Balance of Pre-Petition Arrearage" was $8,363.39.

52.     On or about May 8, 2018, Defendant sent Plaintiff a mortgage statement which reflected a "Total Unpaid" amount of **$18,603.68** and a "Total Payment Amount" due of **$20,225.17**. (emphasis in original). The statement further reflected that (1) there was an "Unapplied Balance" of $1,969.60 and (2) the "Current Balance of Pre-Petition Arrearage" was $7,797.59.

53.     On or about June 8, 2018, Defendant sent Plaintiff a mortgage statement which reflected a "Total Unpaid" amount of **$18,205.55** and a "Total Payment Amount" due of **$19,827.04**. (emphasis in original). The statement further reflected that the "Current Balance of Pre-Petition Arrearage" was $7,231.79.

54.     During the pendency of Plaintiff's Chapter 13 plan, Plaintiff admittedly fell behind on the mortgage payments, but not nearly to the extent alleged by Defendant in its mortgage statements and other correspondences to Plaintiff.

55.     Plaintiff fell behind on the mortgage payments as a result of the misinformation and conflicting information he was receiving from Defendant.

56.     For example, in June 2018, Plaintiff called Defendant  in an attempt to determine the status of the subject loan. During the phone call, Defendant assured Plaintiff that the subject loan was current and that Plaintiff was "caught up."

57.    Shortly thereafter, on June 18, 2018, approximately ten days after sending Plaintiff

the June mortgage statement alleging a post-petition default of $18,205.55 and after advising

Plaintiff that the subject loan was current, Defendant filed a Motion for Relief from Stay

("Defendant's Motion") alleging a post-petition default of $13,962.04. Notably, the default amount

alleged in Defendant's Motion was $4,243.51 less than the default amount alleged by Defendant

in the June mortgage statement.  [Dkt. 31].

58.    Defendant attached a post-petition payment history to its Motion.

59.    Defendant's post-petition payment history indicated the following:

| Date Received | Amount Received | Amount Due | Post-Petition Date Paid | Payment Amount | To/From Suspense | Total Due |
|---|---|---|---|---|---|---|
| **11/17/2017** | **$1,704.52** | **$0.00** | **02/01/17** | **2,019.62** | **-$315.10** | **$316.42** |
| 12/1/2017 | $1,658.21 | $0.00 | | 0.00 | $1,658.21 | $1,974.63 |
| 12/29/2017 | $1,633.48 | $0.00 | 03/01/17 | 2019.62 | -$386.14 | $1,588.49 |
| 1/29/2018 | $1,633.48 | $0.00 | 04/01/17 | 2019.62 | -$386.14 | $1,202.35 |
| 2/27/2018 | $1,621.49 | $0.00 | 05/01/17 | 2019.62 | -$398.13 | $804.22 |
| 3/29/2018 | $1,621.49 | $0.00 | 06/01/17 | 2,019.62 | -$398.13 | $406.09 |
| 4/30/2018 | $1,621.49 | $0.00 | 07/01/17 | 2,019.62 | -$398.13 | $7.96 |
| 5/31/2018 | $1,621.49 | $0.00 | | 0.00 | $1,621.49 | $1,629.45 |
| | $4,633.68 | $0.00 | | 0.00 | $4,633.68 | $6,263.13 |
| | $0.00 | $0.00 | 08/01/17 | 2,019.62 | -$2,019.62 | $4,243.51 |
| | $0.00 | $0.00 | 09/01/17 | 2,019.62 | -$2,019.62 | $2,223.89 |
| | $0.00 | $0.00 | 10/01/17 | 2,019.62 | -$2,019.62 | $204.27 |
| | | $2,019.62 | 11/01/17 | 2,019.62 | $0.00 | -$1,815.35 |
| | | $2,019.62 | 12/01/17 | 2,019.62 | $0.00 | -$3,834.97 |
| | | $2,019.62 | 01/01/18 | 2,019.62 | $0.00 | -$5,854.59 |
| | | $1,621.49 | 02/01/18 | | $0.00 | -$7,476.08 |
| | | $1,621.49 | 03/01/18 | | $0.00 | -$9,097.57 |

| | | $1,621.49 | 04/01/18 | | $0.00 | -$10,719.06 |
| | | $1,621.49 | 05/01/18 | | $0.00 | -$12,340.55 |
| | | $1,621.49 | 06/01/18 | | $0.00 | -$13,962.04 |

(emphasis added)

60.    As demonstrated by the post-petition payment history, the monthly mortgage payment changed from $1,621.19 to $2,019.62 in **November 2017** and Defendant failed to notify Plaintiff, Plaintiff's Counsel, the Chapter 13 Trustee, or the Bankruptcy Court of the payment change.

61.    Accordingly, the concealment of the payment change was a contributing factor to the inflated arrears sought in Defendant's Motion.

62.    Not surprisingly, Plaintiff was mystified by the default amounts alleged in Defendant's Motion.

63.    Defendant's Motion was entered and continued on multiple occasions to allow Plaintiff to decode the mystery and gather the funds to pay the alleged default.

64.    On or about August 8, 2018, Defendant sent Plaintiff a mortgage statement which reflected a "Total Unpaid" amount of **$15,389.67** and a "Total Payment Amount" due of **$17,011.16**. (emphasis in original). The statement further reflected that the "Current Balance of Pre-Petition Arrearage" was $6,363.14.

65.    On August 9, 2018,  approximately *one day* after Defendant sent a mortgage statement representing  that the "Current Balance of Pre-Petition Arrearage" was $6,363.14, the Chapter 13 Trustee filed a Notice of Final Cure Mortgage Payment pursuant to Federal Rule of Bankruptcy Procedure 3002.1(f), stating that "[t]he amount required to cure the default in the claim [Defendant's claim] has been paid in full" and requiring Defendant to file a statement indicating

11

whether (1) it agrees that Plaintiff has cured the pre-petition default, and (2) the Plaintiff is current on the post-petition payments. [Dkt. 36].

66.    On August 16, 2018, Plaintiff made a payment in the amount of $13,962.04 to cure the alleged post-petition default that formed the basis for Defendant's Motion for Relief from Stay.

67.    On August 17, 2018, just one day after Plaintiff cured the alleged post-petition default, Defendant sent Plaintiff a reinstatement quote inexplicably alleging a "total reinstatement amount" of $27,102.37, despite the fact that Defendant's Motion for Relief from Stay alleged a default of only $13,962.14.

68.    On August 30, 2018, the Chapter 13 Trustee filed a Notice of Completion of Plan Payments. [Dkt. 39].

69.    On September 7, 2018, as a result of Plaintiff's cure of the post-petition default, the Bankruptcy Court denied Defendant's Motion for Relief from Stay. [Dkt. 41].

70.    On or about September 10, 2018, Defendant sent Plaintiff a mortgage statement stating there was an "Unapplied Balance" (suspense) of $7,651.34. Moreover, despite the Chapter 13 Trustee's representation that the pre-petition arrears were paid in full, the mortgage statement further stated that the "Current Balance of the Pre-Petition Arrearage" was $6,363.14.

71.    On September 10, 2018, Plaintiff made a payment in the amount of $2,019.62 despite the fact that the last Notice of Mortgage Payment Change filed by Defendant on January 3, 2018 indicated that that monthly mortgage payment was $1,621.49.

72.    On September 18, 2018, approximately one month after alleging a default of $27,102.37, Defendant filed its Response to Notice of Final Cure Payment, astonishingly asserting that:

■    Creditor agrees that the debtor(s) have paid in full the amount
     required to cure the prepetition default on the creditor's claim.

12

■    Creditor states that the debtor(s) are current with all post-petition payments consistent with § 1322(b)(5) of the Bankruptcy Code, including all fees, charges, expenses, escrow, and costs.

The next post-petition payment from the debtor(s) is due on 09/01/2018.

73.    On September 19, 2018, Defendant sent Plaintiff a written correspondence stating "[w]e credited your account $4,633.68 on August 31, 2018, because **we didn't file a payment change notice (PCN), we were late in filing a PCN, or we filed a PCN with an incorrect item listed during your Chapter 13 bankruptcy**." (emphasis added)

74.    Upon information and belief, Defendant never credited Plaintiff's account the $4,633.68 it represented it did in its September 19, 2018 written correspondence.

75.    On or about October 8, 2018, after acknowledging in its Response to Notice of Final Cure Payment that Plaintiff has paid all pre-petition arrears and was current on his mortgage payments, Defendant sent Plaintiff a mortgage statement inexplicably stating (1) that the "Current Balance of the Pre-Petition Arrearage" was $6,363.14 and (2) that since the last statement, there was $6,884.09 in "Unapplied Funds."

76.    On October 18, 2018, as result of Plaintiff's successful completion of his Chapter 13 Plan, the Bankruptcy Court closed Plaintiff's bankruptcy case. [Dkt. 45].

77.    The Bankruptcy Court did not grant Plaintiff a discharge pursuant to 11 U.S.C. §1328(a) because Plaintiff was not eligible for discharge as a result of a previous Chapter 7 discharge.

78.    On November 8, 2018, Defendant sent Plaintiff a mortgage statement that puzzlingly stated "**[a]s of 11/08/18, $11,350.43 is required to bring your loan current**." (emphasis added). The mortgage statement further stated "**[y]ou've missed one or more payments and your mortgage loan is in default**." (emphasis in original)

13

79.     On November 13, 2018, despite the successful completion of Plaintiff's Chapter 13

Plan and Defendant formally deeming Plaintiff current on the subject loan, Defendant, through its

counsel, Codilis & Associates, P.C., sent Plaintiff a "NOTICE TO OCCUPANT OF PENDING

ACQUISITION." The Notice stated, in pertinent part:

> "[t]he mortgage for the property in which you are living is in foreclosure as
> a result of the property owner's default.  Within the next 60 to 90 days, title
> to the property is expected to be transferred to [Defendant]. Sometime
> thereafter, ownership of the property will probably be transferred to the
> Secretary of Housing and Urban Development (HUD)."
>
> ………….
>
> **"YOU MUST REPLY TO THE HUD FIELD OFFICE IN WRITING
> WITHIN 20 DAYS OF THE DATE ON THIS LETTER OR YOU
> WILL BE REQUIRED TO MOVE FROM THE PROPERTY
> BEFORE HUD BECOMES OWNER OF THE PROPERTY**."
> (emphasis in original)

80.     As demonstrated by the "NOTICE TO OCCUPANT OF PENDING

ACQUISITION," Defendant brazenly continued to deem the subject loan in default and was taking

affirmative steps to foreclose on the subject property.

81.     On November 20, 2018, Defendant, through its counsel, Codilis & Associates, P.C.,

filed a "Notice of Sheriff's Sale of Real Estate" ("Notice of Sale") in the foreclosure case.

82.     The Notice of Sale stated, in pertinent part:

> PUBLIC NOTICE IS HEREBY GIVEN that pursuant to a Judgment of
> Foreclosure and Sale entered in the above cause on 7/29/2013, the Sheriff
> of Kendall County, Illinois, will on 12/17/18 at the hour of 8:30 AM Lobby
> of Kendall County Courthouse, 807 John Street Yorkville, IL 60560, or in
> a place otherwise designated at the time of sale, County of Kendall and State
> of Illinois, sell at public auction to the highest bidder for cash, as set forth
> below, the following described real estate:
>
> [Legal Description of Subject Property]

83.     Plaintiff was served with the Notice of Sale.

84.    Also on November 20, 2018, less than two months after deeming the Plaintiff current, Defendant sent Plaintiff a correspondence alleging a "total reinstatement amount" of $10,456.82. The Correspondence stated, in pertinent part:

> The total amount due to reinstate the loan is $10,456.82, which is good through 12-16-18. If you can't pay the total amount by that date, the amount you owe may increase because of items such as additional interest, fees and costs (including those related to any foreclosure activity), property inspections and valuations.

| Your reinstatement quote | | |
|---|---|---|
| Payments due | 6/1/18 | $11,350.43 |
| Late charges | | $0.00 |
| Monthly late charge amount | 64.86 | |
| Insufficient funds (NSF) | | $0.00 |
| Other fees | | $0.00 |
| Suspense | | ($1,029.93) |
| Corporate advances | | $15.00 |
| **Incurred costs through** | 12/16/18 | |
| Incurred attorney fees | | $100.00 |
| Incurred attorney costs | | $21.32 |
| **Subtotal** | | **$10,456.82** |
| Estimated attorney fees | | $0.00 |
| Estimated attorney costs | | $0.00 |
| Total estimated amounts | | $0.00 |
| **Total reinstatement amount good through** | 12/16/18 | |
| **Total reinstatement amount** | | **$10,456.82** |

***

> 6.  If we receive payment of $10,456.82, on or before 12-16-18, we'll take action to discontinue the pending foreclosure activity and the foreclosure action initiated on this property will cease, if your account has been referred to foreclosure.

85.    On November 27, 2018, Defendant sent Plaintiff a written correspondence stating, in pertinent part:

- We want to help you find a mortgage assistance option;

- **Your mortgage payments are past due**, but we have assistance options that may be available to help bring your loan up to date; and

- We hope this face-to-face meeting will help you find a solution to bring your mortgage up to date.

(emphasis added)

86.     On or about December 8, 2018, Defendant sent Plaintiff a mortgage statement that stated "**[a]s of 12/08/18, $13,007.42 is required to bring your loan current**" and that the "Total payment amount" due was $13,007.42. (emphasis added). The mortgage statement further stated "**[y]ou've missed one or more payments and your mortgage loan is in default**." (emphasis in original). Lastly, the mortgage statement indicated that Defendant assessed a $15.00 fee to the subject loan for "inspection costs."[2]

87.     On or about January 9, 2019, Defendant sent Plaintiff a mortgage statement indicating that the "Total payment amount" due was $3,313.98 despite the fact that the monthly mortgage payment at the time was $1,656.99. The mortgage statement further stated that Defendant was holding $907.11 in "Unapplied funds" (suspense).

88.     On or about May 8, 2019, Defendant sent Plaintiff a mortgage statement indicating that the "Total payment amount" due was $3,356.26 despite the fact that the monthly mortgage payment at the time was $1,678.13.

89.     Plaintiff has made every payment that has become due after Defendant filed its Response to Notice of Final Cure Payment indicating that the subject loan was current.

90.     Despite deeming the subject loan current on September 18, 2018 through its Response to Notice of Final Cure Payment, Defendant has continued to treat the subject loan in default as demonstrated by (1) Defendant's failure to dismiss the foreclosure proceedings and cease related legal processes; (2) the mortgage statements and correspondences it sent Plaintiff indicating the subject loan was in default; (3) Defendant holding Plaintiff's mortgage payments in

---

[2] Inspection costs are customarily charged by mortgage servicers when a mortgage loan is in default.

suspense (unapplied funds) and not applying them immediately after receipt as required by the Truth in Lending Act ("TILA"); and (4) the assessment of "inspection" fees to the subject loan.

## DAMAGES

91.    The sole reason Plaintiff filed for bankruptcy was to cure the default on the subject loan and emerge from bankruptcy without the agonizing fear of losing his family home.

92.    Despite making all of his payment as prescribed by his Confirmed Plan, Defendant continued to attempt to collect amounts that were paid through Plaintiff's bankruptcy.

93.    Defendant's failure to honor Plaintiff's bankruptcy and the Confirmed Plan has significantly damaged Plaintiff, who has been left uncertain of when Defendant will throw him back in foreclosure for amounts that were paid through his bankruptcy.

94.    Defendant's failure to comply with various provisions of the Bankruptcy Code and the Bankruptcy Court's orders has caused Plaintiff significant anxiety, fear, agonizing emotional distress, mental anguish, and physical illness.

95.    Specifically, Defendant's unlawful collection efforts have led Plaintiff to believe that his bankruptcy had no legal effect and that Defendant was entitled to the amounts that were paid through his bankruptcy.

96.    As set forth above, Defendant repeatedly sent Plaintiff mortgage statements and correspondences containing erroneous and false information alleging that the subject loan was in default when in fact it was current.

97.    Moreover, Defendant repeatedly sent Plaintiff mortgage statements and written correspondences that contained information that blatantly conflicted with information contained in previous correspondences from Defendant.

98.     Defendant's conduct caused Plaintiff to be in a perpetual state of confusion and uncertainty.

99.     Moreover, Defendant's conduct has caused a significant strain on Plaintiff's marriage as Plaintiff was and continues to be perpetually stressed, irritable, and aggravated, thus adversely impacting Plaintiff's day-to-day interactions with his spouse.

100.    Plaintiff continues to live in perpetual fear and anxiety of losing his family home as a result of Defendant's conduct.

101.    Defendant's actions are especially egregious in light of the fact that Defendant formally acknowledged that the subject loan was current in Plaintiff's bankruptcy, only to deem it in default immediately after Plaintiff's bankruptcy closed.

102.    Moreover, as a result of Defendant's misapplication of Plaintiff's payments, Plaintiff has lost equity in his home as the misapplication of payments resulted in, *inter alia*, erroneous charges (inspection fees) being assessed to the subject loan, thus increasing the principal balance owed and decreasing the equity in Plaintiff's home.

## CLASS ALLEGATIONS

103.    Plaintiff incorporates Paragraphs 1 through 102 as fully set forth herein.

104.    Plaintiff brings the class allegations and claims pursuant to Fed. R. Bankr. P. 7023 and Fed. R. Civ. P. 23, individually, and on behalf of all others similarly situated ("Putative Classes") defined as follows:

### Completed Bankruptcy Class

All persons within the Northern District of Illinois (a) that successfully completed a Chapter 13 bankruptcy; (b) in which mortgage arrears to Defendant were paid in full; (c) in which after the completion of the Chapter 13 bankruptcy, Defendant failed to deem the mortgage loan current and attempted to collect amounts paid

through the Chapter 13 bankruptcy at any time in the last four years and through the date of class certification.

## Payment Change Class

All persons within the Northern District of Illinois (a) whom were debtors in a Chapter 13 bankruptcy proceeding; (b) in which Defendant held a security interest in real estate that served as his/her principal residence; (c) in which Defendant failed to file a timely Notice of Payment Change as required by Fed. R. Bankr. P. 3002.1(b) at any time in the last four years and through the date of class certification.

105.    The following individuals are excluded from the Putative Classes: (1) any Judge or presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Putative Classes; (5) the legal representatives, successors or assigns of any such executed persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released.

### A.    Numerosity:

106.    The exact number of members of the Putative Classes are unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable.

107.    Upon information and belief, Defendant owns/services mortgages for thousands of consumers who fall into the definitions of the Putative Classes.

108.    Members of the Putative Classes can be objectively identified from records of Defendant to be gained in discovery.

### B.    Commonality and Predominance:

19

109.    There are many questions of law and fact common to the claims of Plaintiff and the

Putative Classes, and those questions predominate over any questions that may affect individual

members of the Putative Classes.  Common questions for the Putative Classes include, but are not

necessarily limited to the following:

A.    Whether Defendant changed monthly mortgage payment amounts without

providing Notice(s) of Mortgage Payment Change as required by Fed. R.

Bankr. P. 3002.1(b);

B.    Whether Defendant failed to properly credit payments received pursuant to

confirmed Chapter 13 plans;

C.    Whether Defendant failed to property apply and/or account for all payments

received pursuant to confirmed Chapter 13 plans;

D.    Whether Defendant failed to properly adjust principal balances after the

successful completion of all payments prescribed for in Chapter 13 plans;

E.    Whether Defendant generates inaccurate mortgage statements to consumers

during as well as following completed Chapter 13 plans;

F.    Whether Defendant attempted to collect arrearages, fees, charges, expenses,

escrow, and costs paid through completed Chapter 13 bankruptcy plans;

G.    Whether Defendant collected arrearages, fees, charges, expenses, escrow,

and costs paid through completed Chapter 13 bankruptcy plans;

H.    Whether Defendant systematically misapplies payments received during

Chapter 13 bankruptcies; and

I.    Whether Defendant systematically attempts to collect amounts already paid

through completed Chapter 13 plans.

**C.     Typicality:**

110.     Plaintiff's claims are typical of members of the Putative Class because Plaintiff and members of the Putative Classes are entitled to damages as result of Defendant's conduct.

**D.     Superiority and Manageability:**

111.     This case is also appropriate for class certification as class proceedings are superior to all other available methods for the efficient and fair adjudication of this controversy.

112.     The damages suffered by the individual members of the Putative Classes will likely be relatively small, especially given the burden and expense required for individual prosecution.

113.     By contrast, a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

114.     Economies of effort, expense, and time will be fostered and uniformity of decisions ensured.

**E.     Adequate Representation:**

115.     Plaintiff will adequately and fairly represent and protect the interests of the Putative Classes.

116.     Plaintiff has no interests antagonistic to those of the Putative Classes, and Defendant has no defenses unique to Plaintiff.

117.     Plaintiff has retained competent and experienced counsel in consumer bankruptcy litigation and consumer class action litigation.

## CLAIMS FOR RELIEF

## COUNT I

**Civil Contempt of Order Confirming Plan Pursuant to 15 U.S.C. § 105**
**(On behalf of Plaintiff and Members of the Completed Bankruptcy Class)**

118.     Plaintiff incorporates Paragraphs 1 through 117 as fully set forth herein.

119.    "The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007).

120.    Provisions of the Bankruptcy Code "balance mortgage lenders' special rights with debtor rights and protections. The primary right provided to debtors is the right to cure arrearages and remain current on mortgage debt so that debtors emerge from Chapter 13 with the promised fresh start." *Rodriguez v. Countrywide Home Loans, Inc.* (*In re Rodriguez*), 2008 Bankr. LEXIS 2646, at *4 (Bankr. S.D. Tex. 2008); *see also* 11 U.S.C. §1322(b)(2) (a Chapter 13 plan may provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending).

121.    Pursuant to 11 U.S.C. §1327(a), the  provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

122.     "Akin to a court-approved contract, a confirmed plan binds all parties by the contract – the debtor, the trustee, and all creditors." *In re McDonald*, 336 B.R. 380, 383 (Bankr. N.D. Ill. 2006) (citing *In re Harvey*, 213 F.3d 318, 321 (7th Cir. 2000)); *see also Beskin v. McPherson*, 350 B.R. 38, 46 (Bankr. W.D. Va. 2006) ("The chapter 13 plan constitutes a new agreement between the debtor and each secured creditor. A debtor's obligations under the plan are substituted for his or her obligations under the original contract with each secured creditor").

123.    "The creditor's obligation [with respect to a confirmed plan] ensure that the debtor can cure arrearages and emerge from bankruptcy no longer facing foreclosure because of default. Accordingly, the creditor must allocate payments pursuant to the plan. Improper allocation of payments deprives a debtor of the promised fresh start and rights provided by §1322(b)(5) to cure

arrearages and remain current on mortgage obligations. *Rodriguez,* 2008 Bankr. LEXIS 2646, at *10.

124.   "Thus, the mortgage lender must allocate payments among principal, interest, and arrearages in the manner prescribed by the plan. If a mortgage lender allocates payments that the plan dedicates to pre-petition arrearages to principal and interest or a post-petition charge, without court approval, the mortgage lender violates the terms of the plan and the lender may be subject to liability for violating the order confirming the plan." *Id.* at *10-11.

125.   "Violating a confirmed plan also violates the order confirming it." *In re Ranieri,* 598 B.R. 450, Fn. 3 (Bankr. N.D. Ill. 2019).

126.   "The Seventh Circuit has long recognized the sanctity of confirmation orders." *In re Lasica*, 294 B.R. 718, 721 (Bankr. N.D. Ill. 2003).

127.   Pursuant to §105 of the Bankruptcy Code, the Bankruptcy Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. *See* 11 U.S.C. §105.

128.   "Courts have used §105 to remedy violations of confirmed plans. A bankruptcy court's authority under §105 to enforce its own orders cannot be reasonably questioned." *Rodriguez*, 2008 Bankr. LEXIS 2646, at *62 citing *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000).

129.   "When a confirmed plan has been ignored and undermined, §105 permits the [Bankruptcy Court] to take any action or make any determination necessary to enforce its confirmation order." *Payne v. Mortg. Elec. Registration Sys., Inc.,* 387 B.R. 614, 639 (Bankr. Kan. 2008).

130.    The "bankruptcy court retains jurisdiction to protect the confirmation order, prevent interference with the execution of the plan, and otherwise aid in the plan's operation." *In re Castle Home Builders, Inc.,* 520 B.R. 98, 101 (Bankr. N.D. Ill. 2014).

131.    "Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Am. Airlines, Inc.,* 228 F.3d at 585 quoting *United States. v. United Mine Workers of Am.,* 330 U.S. 258, 303-04 (1947).

132.    Here, Plaintiff's Confirmed Plan expressly states:

(a) *Prepetition defaults.* If the debtor pays the cure amount specified in Paragraph 5 of Section E, while timely making all required postpetition payments, the mortgage will be reinstated according to its original terms, extinguishing any right of the mortgagee to recover any amount alleged to have arisen prior to the filing of the petition.

133.    Despite receiving all payments necessary to cure the pre-petition default on the subject loan and all post-petition mortgage payments, Defendant disregarded the bankruptcy process and the Order confirming the Confirmed Plan [Dkt. 26] by (1) attempting to collect pre-petition arrears after Plaintiff's bankruptcy case was successfully completed; (2) applying Plaintiff's post-petition payments to pay pre-petition arrears causing Plaintiff to be in a perpetual state of default on the subject loan; (3) holding Plaintiff's payments in suspense and not applying the payments immediately after receipt; (4) continuing collection activity after the successful completion of Plaintiff's bankruptcy case to recover amounts duly paid through Plaintiff's bankruptcy case; and (5) assessing default  fees (inspection fees) to the subject loan despite the fact that the subject loan was contractually current as acknowledged by Defendant in its Response to Notice of Final Cure Payment.

134.    As set forth above, Plaintiff was significantly harmed by Defendant's failure to comply with and honor this Court's Orders and the bankruptcy process in general.

135.    Upon information and belief, Plaintiff is one of thousands of victims of Defendant's systematic practice of (1) attempting to collect amounts paid through a Chapter 13 plan after the successful completion of a Chapter 13 plan; (2) improperly applying post-petition mortgage payments to cure pre-petition defaults, and (3) failing to apply post-petition payments pursuant to the terms of the confirmed Chapter 13 plans, instead holding the payments in suspense.

136.    As a result of Defendant's actions, Plaintiff and other consumers were never properly deemed current on their mortgage loans after the successful completion of their Chapter 13 plans, and thus were denied the fresh start contemplated by the Bankruptcy Code.

137.    As set forth above, Defendant systematically defrauds not only consumers that have completed their Chapter 13 plans, but also the Bankruptcy Court.

138.    Accordingly, punitive damages are warranted to punish Defendant and to deter future misconduct.

**WHEREFORE**, pursuant to 11 U.S.C. §105, Plaintiff respectfully requests that the Court grant Plaintiff and the Completed Bankruptcy class the following relief:

a.    An order finding Defendant in civil contempt of the Court's Order confirming Plaintiff's Modified Plan [Dkt. 26];

b.    Enjoining Defendant from further non-compliance of the Court's Order confirming Plaintiff's Modified Plan [Dkt. 26];

c.    An order compelling Defendant to update its records to reflect that the Plaintiff is current on the subject loan and to retroactively apply all post-petition payments consistent with the Confirmed Plan and applicable bankruptcy provisions;

d.    Awarding Plaintiff compensatory damages in an amount no less than $100,000.00;

e.   Assessing punitive damages against Defendant in an amount no less than $300,000.00 for its contempt of the Court's Order confirming Plaintiff's Modified Plan [Dkt. 26] and to deter Defendant from future non-compliance;

f.   Awarding Plaintiff his attorney's fees and costs;

g.   An order granting certification of the Completed Bankruptcy class, including the designation of Plaintiff as the named representative, and the appointment of the undersigned as Class Counsel;

h.   Enjoining Defendant from further non-compliance with Orders confirming the Completed Bankruptcy class' Chapter 13 plans;

i.   An order compelling Defendant to update its records to reflect and correctly apply all post-petition payments consistent with the Completed Bankruptcy class' confirmed Chapter 13 plans;

j.   Awarding the Completed Bankruptcy class compensatory damages in an amount to be determined at trial after class certification and after members of the Completed Bankruptcy class are identified;

k.   Awarding the Completed Bankruptcy class punitive damages in an amount to be determined at trial after class certification and after members of the Completed Bankruptcy class are identified; and

l.   Any further relief that the Court may deem just and proper.

## COUNT II

### Violations of Federal Rule of Bankruptcy Procedure 3002.1(b)
### (On behalf of Plaintiff and Members of the Payment Change Class)

139.   Plaintiff incorporates Paragraphs 1 through 117 as fully set forth herein.

140.   Fed. R. Bankr. P. 3002.1(b) requires the holder of a claim secured by a security interest in the debtor's principal residence  to "file and serve on the debtor, debtor's counsel, and the trustee a notice of any change in the payment amount, including any change that results from an interest rate or escrow account adjustment, no later than 21 days before a payment in the new amount is due." *See* Fed. R. Bankr. P.  3002.1(b).

141.    Defendant violated Rule 3002.1(b) by failing to notify the Plaintiff, Plaintiff's counsel, and the Chapter 13 Trustee of a payment change during the course of Plaintiff's bankruptcy. *See* ¶¶45-46, 59-60.

142.    As set forth above, payment on the subject loan changed and Defendant failed to notify Plaintiff, Plaintiff's counsel, and the Chapter 13 Trustee of the payment change. *Id.*

143.    As set forth above, Defendant acknowledged failing to provide notification required by Rule 3002.1(b) in its September 19, 2018 correspondence to Plaintiff. *See* ¶73.

144.    Pursuant to Rule 3002.1(f), Plaintiff has a private right of action against Defendant for its failure to comply with Rule 3002.1(b).

145.    As set forth above, Plaintiff was significantly harmed by Defendant's non-compliance with Rule 3002.1(b).

146.    Upon information and belief, Plaintiff is one of thousands of victims of Defendant's systematic practice of changing mortgage payments without proper notification.

147.    As a result of Defendant's failure to comply with Rule 3002.1(b), Plaintiff and other consumers were thrown into a perpetual state of confusion and uncertainty as to the status of their mortgage loans.

148.    Moreover, upon information and belief, many consumers defaulted on their mortgage loans due to Defendant's concealment of the payment changes.

**WHEREFORE,** pursuant to Rule 3002.1(f), Plaintiff respectfully requests that the Court grant Plaintiff and the Payment Change Class the following relief:

a.    Awarding Plaintiff compensatory damages in an amount no less than $20,000.00 for Defendant's non-compliance with Rule 3002.1(b);

b.    Assessing punitive damages against Defendant for its non-compliance with Rule 3002.1(b) with respect to Plaintiff in amount no less than $100,000.00 to deter future non-compliance;

    c.      Awarding Plaintiff his attorney's fees and costs;

    d.      An order granting certification of the Payment Change Class, including the designation of Plaintiff as the named representative, and the appointment of the undersigned as Class Counsel;

    e.      Enjoining Defendant from further non-compliance with Rule 3002.1(b);

    f.      Awarding the Payment Change Class compensatory damages in an amount to be determined at trial after class certification and after members of the Payment Change Class are identified;

    g.      Awarding the Payment Change Class punitive damages in an amount to be determined at trial after class certification and after members of the Payment Change Class are identified; and

    h.      Any further relief that the Court may deem just and proper.

Dated: December 27, 2019                     Respectfully Submitted,

                                         /s/ *Mohammed O. Badwan*

                                       /s/ *Joseph S. Davidson*

                                       Mohammed O. Badwan, Esq.
Joseph S. Davidson, Esq.
*Counsel for Debtor-Plaintiff*
Sulaiman Law Group, Ltd.
2500 S. Highland Ave.
Suite 200
Lombard, IL 60148
Phone (630) 575-8180
Fax: (630) 575- 8188
mbadwan@sulaimanlaw.com
jdavidson@sulaimanlaw.com