**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In Re: | Case No. 1:13-bk-41746 |
| Cesar L. Rojo | Chapter 13 |
| Debtor(s) | Honorable Judge LaShonda A. Hunt |

**NOTICE OF MOTION**

To: *service list affixed*

PLEASE TAKE NOTICE that on October 2, 2020, at 10:30 AM, I will appear before the Honorable LaShonda A. Hunt, or any Judge sitting in that Judge's place, and present **DEBTORS' MOTION FOR SANCTIONS**, a copy of which is attached.

**This Motion will be presented and heard telephonically**.  No personal appearance in court is necessary or permitted.  To appear and be heard telephonically on this Motion, you must set up and use an account with Court Solutions, LLC.  You can set up an account at www.courtsolutions.com or by calling Court Solutions, LLC at (917) 746-7476.

**If you disagree with this Motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date.  If a Notice of Objection is timely filed, the Motion will be called on the presentment date.  If no Notice of Objection is timely filed, the court may grant the relief sought herein in advance without hearing.

*CESAR L. ROJO*

By: */s/ Mohammed Badwan*

Mohammed Badwan
SULAIMAN LAW GROUP, LTD.
2500 South Highland Avenue
Suite 200
Lombard, Illinois 60148
+1 630-575-8181
mbadwan@sulaimanlaw.com

Label Matrix for local noticing
0752-1
Case 13-41746
Northern District of Illinois
Eastern Division
Thu Sep 24 12:57:39 CDT 2020

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION
c/o Codilis and Associates, P.C.
15W030 North Frontage Road, Suite 100
Burr Ridge, IL 60527-6921

JPMorgan Chase Bank, NA
c/o Codilis & Associates, P.C.
15W030 North Frontage Road
Suite 100
Burr Ridge, IL 60527-6921

U.S. Bankruptcy Court
Eastern Division
219 S Dearborn
7th Floor
Chicago, IL 60604-1702

ALTAIR OH XIII, LLC
C O WEINSTEIN,PINSON AND RILEY, PS
2001 WESTERN AVENUE, STE 400
SEATTLE, WA 98121-3132

Barclaycard Card Services
P.O. Box 8802
Wilmington, Delaware 19899-8802

CERASTES, LLC
C O WEINSTEIN,PINSON AND RILEY, PS
2001 WESTERN AVENUE, STE 400
SEATTLE, WA 98121-3132

Capital One Bank
P.O. Box 30285
Salt Lake City, Utah 84130-0285

Ed Financial
120 N. Seven Oaks Drive
Knoxville, Tennessee 37922-2359

Edfinancial on behalf of US Dept. of Educati
120 N. Seven Oaks Dr.
Knoxville, TN 37922-2359

Firstmark Services
P.O. Box 82522
Lincoln, Nebraska 68501-2522

Gumaro Arroyo
108 Kingston Drive
Bolingbrook, Illinois 60440-3037

Illinois Student Assistance Commission
c/o Firstmark Services
PO Box 82522
Lincoln, NE 68501-2522

JP Morgan Chase Bank
c/o Codilis & Associates
15W030 North Frontage Road, Suite 100
Burr Ridge, Illinois 60527-6921

(p)JPMORGAN CHASE BANK  N A
BANKRUPTCY MAIL INTAKE TEAM
700 KANSAS LANE FLOOR 01
MONROE LA 71203-4774

Sallie Mae
P.O. Box 9655
Wilkes-Barre, Pennsylvania 18773-9655

Sallie Mae
c/o Sallie Mae Inc.
220 Lasley Ave
Wilkes-Barre, PA 18706-1496

Cesar L. Rojo
7658 Springbrook Drive
Plainfield, IL 60586-4252

Glenn B Stearns
801 Warrenville Road
Suite 650
Lisle, IL 60532-4350

Mohammed O Badwan
Sulaiman Law Group, LTD
2500 S. Highland Ave
Suite 200
Lombard, IL 60148-7103

Patrick S Layng
Office of the U.S. Trustee, Region 11
219 S Dearborn St
Room 873
Chicago, IL 60604-2027

Robert J Adams
Robert J Adams & Associates
540 W. 35th St., Ste. 100
Chicago, IL 60616-3532

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

JPMorgan Chase Bank, National Association
Chase Records Center
700 Kansas Lane
Mail Code LA4-5555
Monroe, LA 71203

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

```
(d)JPMorgan Chase Bank, NA          End of Label Matrix
c/o Codilis & Associates, P.C.      Mailable recipients    21
15W030 North Frontage Road          Bypassed recipients     1
Suite 100                           Total                  22
Burr Ridge, IL 60527-6921
```

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | Chapter 13 |
| CESAR L. ROJO | ) | |
| | ) | |
| | ) | Case No. 13-41746 |
| | ) | |
| Debtor. | ) | |
| | ) | Honorable Judge LaShonda A. Hunt |
| | ) | |

**DEBTOR'S MOTION FOR SANCTIONS FOR CIVIL CONTEMPT AGAINST**
**JPMORGAN CHASE BANK, NATIONAL ASSOCIATION**

**NOW COMES** Debtor, CESAR L. ROJO, individually, and on behalf of all others

similarly situated, by and through his undersigned counsel, and pursuant to Fed. R. Bankr. P. 9020,

Fed. R. Bankr. P. 9014, Fed. R. Bankr. P. 7023, Fed. R. Bankr. P. 3002.1, and 11 U.S.C. §105,

seeking sanctions against JPMORGAN CHASE BANK, NATIONAL ASSOCIATION as follows:

**JURISDICTION**

1.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. § 1334(b), 28

U.S.C. § 157(a), and Local Rule 40.3.1.

2.      This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (L), and (O).

**PARTIES**

3.      CESAR L. ROJO ("Rojo") is a natural person, over 18-years-of-age, who at all

times relevant resided in this judicial district.

4.      JPMORGAN CHASE BANK, NATIONAL ASSOCIATION ("Chase") is a

prominent national banking institution that originates and services mortgage loans. Chase

maintains its headquarters in Columbus, Ohio and regularly conducts business in this judicial district and throughout the United States.

5.      Chase is a highly sophisticated publicly traded banking institution that regularly participates in bankruptcy proceedings nationwide.

## NATURE OF THE MOTION

6.      Rojo is one of many victims of Chase's systematic practice of violating the terms of confirmed Chapter 13 plans. Specifically, as set forth below, Chase systematically misapplies post-petition mortgage payments, ultimately causing bankruptcy debtors to fall into a default status on the their mortgage loans as soon as the bankruptcy case is completed.

7.      As a result of Chase's practices, Rojo and other bankruptcy debtors were never appropriately considered current after the successful completion of their Chapter 13 plans, and thus never received the fresh start contemplated by the Bankruptcy Code.

## FACTUAL ALLEGATIONS

10.     On May 24, 2010, Rojo executed a mortgage ("subject mortgage") in favor of Wintrust Mortgage Corporation ("Wintrust").

11.     The subject mortgage secured the purchase of Rojo's principal residence located at 7658 Springbrook Drive, Plainfield, Illinois 60586 ("subject property").

12.     The subject mortgage secured the repayment of a mortgage loan in the amount of $171,830.00 issued to Rojo to fund the purchase of the subject property ("subject loan").

13.     On February 1, 2012, Rojo defaulted on the subject loan by failing to make the monthly mortgage payments.

14.     On March 9, 2012, Wintrust assigned the subject loan and mortgage to Chase.

15.     On February 4, 2013, Chase initiated mortgage foreclosure proceedings against Rojo and the subject property in the Circuit Court of Kendall County ("foreclosure case").

16.     On July 29, 2013, a judgment of foreclosure was entered in favor of Chase in the foreclosure case.

17.     On October 25, 2013, Rojo filed a Chapter 13 bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois, case No. 13-41746.  [Dkt. 1].

18.     Also on October 25, 2013, Rojo filed a Chapter 13 Plan. [Dkt. 8].

19.     Rojo's Chapter 13 plan proposed to cure the default on the subject loan while making the ongoing payments on the subject loan as they became due. *Id.*

20.      On January 30, 2014, Rojo filed a Modified Chapter 13 Plan. [Dkt. 24].

21.     Rojo's Modified Plan also proposed to cure the default on the subject loan while making the ongoing payments on the subject loan as they became due. *Id.*

22.     Specifically, Rojo's Modified Chapter 13 provided:

**Section C** *Direct payment of claims by debtor***:**

The debtor will make current monthly payments, as listed in debtor's Schedule J – increased or decreased as necessary to reflect changes in variable interest rate, escrow requirements, collection costs, or similar matters – directly to the following creditors holding claims secured by a mortgage on the debtor's real property:

Creditor: JP Morgan Chase Bank, N.A., monthly payment, $1,604.00

**Section E** *Disbursements by the trustee***:**

The trustee shall disburse payments received from the debtor under this plan as follows:

5.  *Mortgage arrears.*  Payable as set forth below, regardless of contrary proofs of claim, except that the arrears payable may be reduced either with the consent of the mortgagee or by court order, entered on motion of the debtor with notice to the trustee and the mortgagee.  Any such reduction shall be effective 14 days

3

after either the trustee's receipt of a notice of reduction consented to by the mortgagee or the entry of a court order reducing the arrearage.

(a) To creditor JP Morgan Chase Bank, N.A., arrears of $30,755.00 payable monthly from available funds, pro rata with other mortgage arrears, ■ without interest /or/ ☐ with interest at an annual percentage rate of _____%. These arrearage payments, over the term of the plan, are estimated to total $30,755.00.

23.     On February 2, 2014, Rojo's Modified Chapter 13 plan was served upon Chase by the Bankruptcy Noticing Center. [Dkt. 25].

24.     Chase did not object to Rojo's Modified Chapter 13 Plan.

25.     On February 7, 2014, the Bankruptcy Court confirmed Rojo's Modified Chapter 13 plan ("Confirmed Plan").  [Dkt. 26].

26.     As set forth in the Confirmed Plan, the ongoing mortgage payments to Chase were $1,604 per month. [Dkt. 24].

27.     On March 4, 2014, Chase filed a proof of claim (Claim 8-1) in the amount of $198,935.05. *See* Claim 8-1.

28.     In its proof of claim, Chase asserted mortgage arrears in the amount of $37,118.14. *Id.*

29.     Notably, the arrears claimed in Chase's proof of claim ($37,118.14) were $6,363.14 more than the arrears provided for in the Confirmed Plan ($30,755.00).

30.     On January 7, 2015, Chase filed a Notice of Mortgage Payment Change, which reflected an increase of the monthly mortgage payment from $1,604.43 to $1,624.46, effective February 1, 2015.[1] *See* Claims Register, Claim 8-1.

---

[1] The Notice of Mortgage Payment Changed included a mortgage statement which erroneously stated that Rojo's mortgage payment was increasing from $962.23 to $1,624.46. However, according to the proof of claim filed by Chase, the monthly mortgage payment beginning 11/01/2013 was $1,604.43. Up to the time that Chase filed its Notice of Mortgage Payment Change, Rojo was making monthly payments of $1,604.43 (includes principal, interest, and escrow) per the amount reflected in Chase's proof of claim.

31.     On December 17, 2015, Chase filed a Notice of Mortgage Payment Change, which reflected an increase of the monthly mortgage payment from $1,624.46 to $1,633.48, effective February 1, 2016. *See* Claims Register, Claim 8-1.

32.     Starting in July 2016, Chase started sending monthly statements to Rojo seeking payment in excess of the monthly mortgage payment set forth in the Confirmed Plan and subsequent Notices of Mortgage Payment Change.

33.     On or about July 1, 2016, Chase sent Rojo a mortgage statement stating a "Total Amount Due" of $3,266.96 and that Chase was holding $1,316.34 in "Unapplied Funds" (suspense). Notably, the mortgage statement did not allege that Rojo was in default on his post-petition mortgage payments.

34.     On or about August 1, 2016, Chase sent Rojo a mortgage statement stating a "Total Amount Due" of $3,266.96 and that Chase was holding $1,316.34 in "Unapplied Funds" (suspense). Notably, the mortgage statement did not allege that Rojo was in default on his post-petition mortgage payments.

35.     On or about September 1, 2016, Chase sent Rojo a mortgage statement stating a "Total Amount Due" of $3,266.96 and that Chase was holding $1,345.39 in "Unapplied Funds" (suspense). Notably, the mortgage statement did not allege that Rojo was in default on his post-petition mortgage payments.

36.     On or about December 1, 2016, Chase sent Rojo a mortgage statement stating that the subject loan had an "Unapplied Balance" (suspense) of $2,341.30. Notably, the mortgage statement did not allege that Rojo was in default on his post-petition mortgage payments.

37.     On December 14, 2016, Chase filed a Notice of Mortgage Payment Change, which reflected an increase of the monthly mortgage payment from $1624.46 to $1,704.52, effective February 1, 2017. *See* Claims Register, Claim 8-1.

38.     On or about January 3, 2017, Chase sent Rojo a mortgage statement stating a "Total Amount Due" of $4,971.48 and that Chase was holding $2,882.88 in "Unapplied Funds" (suspense). Notably, the mortgage statement did not allege that Rojo was in default on his post-petition mortgage payments.

39.     Throughout 2017, Chase continued to send Rojo correspondences that sought an amount in excess of the monthly mortgage payment set forth in the Confirmed Plan and subsequent Notices of Mortgage Payment Change.

40.     Many of these correspondences demonstrated that Chase was not properly applying the payments made by Rojo, but instead holding them as "Unapplied Funds" (suspense).

41.     For example, the February 2017 mortgage statement indicated that Chase was holding $1,838.04 in "Unapplied Funds" despite the fact that the unapplied funds were sufficient to cover a monthly mortgage payment of $1,704.52. Moreover, the mortgage statement stated a "Total Amount Due" of $5,042.52. Notably, the mortgage statement did not allege that Rojo was in default on his post-petition mortgage payments.

42.     The March 2017 mortgage statement indicated that Chase was holding $2,417.66 in "Unapplied Funds" despite the fact that the unapplied funds were sufficient to cover a monthly mortgage payment of $1,704.52. Moreover, the mortgage statement stated a "Total Amount Due" of $5,113.56. Notably, the mortgage statement did not allege that Rojo was in default on his post-petition mortgage payments.

43.     The April 2017 mortgage statement indicated that Chase was holding $3,068.32 in "Unapplied Funds" despite the fact that the unapplied funds were sufficient to cover a monthly mortgage payment of $1,704.52. Notably, the mortgage statement did not allege that Rojo was in default on his post-petition mortgage payments.

44.     Throughout 2017, Chase continued to send Rojo mortgage statements indicating that Chase was holding "Unapplied Funds" that were sufficient to cover the monthly mortgage payment and stating a "Total Amount Due" that was in excess of the monthly mortgage payment set forth in the Confirmed Plan and subsequent Notices of Mortgage Payment Change.

45.     On or about December 1, 2017, Chase sent Rojo a mortgage statement inexplicably stating that the monthly mortgage payment was now $2,019.62, up from $1,704.52.

46.     Chase did not notify the Rojo, the Rojo's counsel, the Chapter 13 Trustee, or the Bankruptcy Court of this payment increase as required by Fed. R. Bankr. P. 3002.1(b).

47.     After receiving the correspondence from Chase reflecting the payment increase to $2,019.62, Chase sent subsequent statements to Rojo indicating that the monthly payment amount is $1,621.49, thus causing Rojo significant confusion and uncertainty regarding the amount he needed to pay to stay current on his post-petition mortgage payments.

48.     Erring on the side of caution, Rojo made numerous payments in the amount of $2,019.62 when he was able to afford it.

49.     On January 3, 2018, one month after sending Rojo a mortgage statement indicating that the monthly payment increased to $2,019.62, Chase filed a Notice of Mortgage Payment Change, which reflected a decrease of the monthly mortgage payment from $1,704.52 to $1,621.49, effective February 1, 2018.

50.     On or about March 8, 2018, Chase sent Rojo a mortgage statement indicating that the subject loan had an "Unapplied Balance" of $3,331.32, which was sufficient to cover a monthly mortgage payment of $1,621.49. Notably, the mortgage statement did not allege that Rojo was in default on his post-petition mortgage payments.

51.     On or about April 9, 2018, Chase sent Rojo a mortgage statement which reflected a "Total Unpaid" amount of **$19,001.81** and a "Total Payment Amount" due of **$20,623.30**. (emphasis in original). The statement further reflected that (1) there was an "Unapplied Balance of $1,981.59 and (2) the "Current Balance of Pre-Petition Arrearage" was $8,363.39.

52.     On or about May 8, 2018, Chase sent Rojo a mortgage statement which reflected a "Total Unpaid" amount of **$18,603.68** and a "Total Payment Amount" due of **$20,225.17**. (emphasis in original). The statement further reflected that (1) there was an "Unapplied Balance" of $1,969.60 and (2) the "Current Balance of Pre-Petition Arrearage" was $7,797.59.

53.     On or about June 8, 2018, Chase sent Rojo a mortgage statement which reflected a "Total Unpaid" amount of **$18,205.55** and a "Total Payment Amount" due of **$19,827.04**. (emphasis in original). The statement further reflected that the "Current Balance of Pre-Petition Arrearage" was $7,231.79.

54.     During the pendency of Rojo's Chapter 13 plan, Rojo admittedly fell behind on the mortgage payments, but not nearly to the extent alleged by Chase in its mortgage statements and other correspondences to Rojo.

55.     Rojo fell behind on the mortgage payments as a result of the misinformation and conflicting information he was receiving from Chase.

56.  For example, in June 2018, Rojo called Chase in an attempt to determine the status of the subject loan. During the phone call, Chase assured Rojo that the subject loan was current and that Rojo was "caught up."

57.  Shortly thereafter, on June 18, 2018, approximately ten days after sending Rojo the June mortgage statement alleging a post-petition default of $18,205.55 and after advising Rojo that the subject loan was current, Chase filed a Motion for Relief from Stay ("Chase's Motion") alleging a post-petition default of $13,962.04. Notably, the default amount alleged in Chase's Motion was $4,243.51 less than the default amount alleged by Chase in the June mortgage statement.  [Dkt. 31].

58.  Chase attached a post-petition payment history to its Motion.

59.  Chase's post-petition payment history indicated the following:

| Date Received | Amount Received | Amount Due | Post-Petition Date Paid | Payment Amount | To/From Suspense | Total Due |
|---|---|---|---|---|---|---|
| **11/17/2017** | **$1,704.52** | **$0.00** | **02/01/17** | **2,019.62** | **-$315.10** | **$316.42** |
| 12/1/2017 | $1,658.21 | $0.00 | | 0.00 | $1,658.21 | $1,974.63 |
| 12/29/2017 | $1,633.48 | $0.00 | 03/01/17 | 2019.62 | -$386.14 | $1,588.49 |
| 1/29/2018 | $1,633.48 | $0.00 | 04/01/17 | 2019.62 | -$386.14 | $1,202.35 |
| 2/27/2018 | $1,621.49 | $0.00 | 05/01/17 | 2019.62 | -$398.13 | $804.22 |
| 3/29/2018 | $1,621.49 | $0.00 | 06/01/17 | 2,019.62 | -$398.13 | $406.09 |
| 4/30/2018 | $1,621.49 | $0.00 | 07/01/17 | 2,019.62 | -$398.13 | $7.96 |
| 5/31/2018 | $1,621.49 | $0.00 | | 0.00 | $1,621.49 | $1,629.45 |
| | $4,633.68 | $0.00 | | 0.00 | $4,633.68 | $6,263.13 |
| | $0.00 | $0.00 | 08/01/17 | 2,019.62 | -$2,019.62 | $4,243.51 |
| | $0.00 | $0.00 | 09/01/17 | 2,019.62 | -$2,019.62 | $2,223.89 |
| | $0.00 | $0.00 | 10/01/17 | 2,019.62 | -$2,019.62 | $204.27 |
| | | $2,019.62 | 11/01/17 | 2,019.62 | $0.00 | -$1,815.35 |

| | | $2,019.62 | 12/01/17 | 2,019.62 | $0.00 | -$3,834.97 |
| | | $2,019.62 | 01/01/18 | 2,019.62 | $0.00 | -$5,854.59 |
| | | $1,621.49 | 02/01/18 | | $0.00 | -$7,476.08 |
| | | $1,621.49 | 03/01/18 | | $0.00 | -$9,097.57 |
| | | $1,621.49 | 04/01/18 | | $0.00 | -$10,719.06 |
| | | $1,621.49 | 05/01/18 | | $0.00 | -$12,340.55 |
| | | $1,621.49 | 06/01/18 | | $0.00 | -$13,962.04 |

(emphasis added)

60.     As demonstrated by the post-petition payment history, the monthly mortgage payment changed from $1,621.19 to $2,019.62 in **November 2017** and Chase failed to notify Rojo, Rojo's Counsel, the Chapter 13 Trustee, or the Bankruptcy Court of the payment change.

61.     Accordingly, the concealment of the payment change was a contributing factor to the inflated arrears sought in Chase's Motion.

62.     Not surprisingly, Rojo was mystified by the default amounts alleged in Chase's Motion.

63.     Chase's Motion was entered and continued on multiple occasions to allow Rojo to decode the mystery and gather the funds to pay the alleged default.

64.     On or about August 8, 2018, Chase sent Rojo a mortgage statement which reflected a "Total Unpaid" amount of **$15,389.67** and a "Total Payment Amount" due of **$17,011.16**. (emphasis in original). The statement further reflected that the "Current Balance of Pre-Petition Arrearage" was $6,363.14.

65.     On August 9, 2018,  approximately *one day* after Chase sent a mortgage statement representing  that the "Current Balance of Pre-Petition Arrearage" was $6,363.14, the Chapter 13 Trustee filed a Notice of Final Cure Mortgage Payment pursuant to Federal Rule of Bankruptcy

10

Procedure 3002.1(f), stating that "[t]he amount required to cure the default in the claim [Chase's claim] has been paid in full" and requiring Chase to file a statement indicating whether (1) it agrees that Rojo has cured the pre-petition default, and (2) the Rojo is current on the post-petition payments. [Dkt. 36].

66.     On August 16, 2018, Rojo made a payment in the amount of $13,962.04 to cure the alleged post-petition default that formed the basis for Chase's Motion for Relief from Stay.

67.     On August 17, 2018, just one day after Rojo cured the alleged post-petition default, Chase sent Rojo a reinstatement quote inexplicably alleging a "total reinstatement amount" of $27,102.37, despite the fact that Chase's Motion for Relief from Stay alleged a default of only $13,962.14.

68.     On August 30, 2018, the Chapter 13 Trustee filed a Notice of Completion of Plan Payments. [Dkt. 39].

69.     On September 7, 2018, as a result of Rojo's cure of the post-petition default, the Bankruptcy Court denied Chase's Motion for Relief from Stay. [Dkt. 41].

70.     On or about September 10, 2018, Chase sent Rojo a mortgage statement stating there was an "Unapplied Balance" (suspense) of $7,651.34. Moreover, despite the Chapter 13 Trustee's representation that the pre-petition arrears were paid in full, the mortgage statement further stated that the "Current Balance of the Pre-Petition Arrearage" was $6,363.14.

71.     On September 10, 2018, Rojo made a payment in the amount of $2,019.62 despite the fact that the last Notice of Mortgage Payment Change filed by Chase on January 3, 2018 indicated that that monthly mortgage payment was $1,621.49.

72.     On September 18, 2018, approximately one month after alleging a default of $27,102.37, Chase filed its Response to Notice of Final Cure Payment, astonishingly asserting that:

■     Creditor agrees that the debtor(s) have paid in full the amount required to cure the prepetition default on the creditor's claim.

■     Creditor states that the debtor(s) are current with all post-petition payments consistent with § 1322(b)(5) of the Bankruptcy Code, including all fees, charges, expenses, escrow, and costs.

The next post-petition payment from the debtor(s) is due on 09/01/2018.

73.     On September 19, 2018, Chase sent Rojo a written correspondence stating "[w]e credited your account $4,633.68 on August 31, 2018, because **we didn't file a payment change notice (PCN), we were late in filing a PCN, or we filed a PCN with an incorrect item listed during your Chapter 13 bankruptcy**." (emphasis added)

74.     Upon information and belief, Chase never credited Rojo's account the $4,633.68 it represented it did in its September 19, 2018 written correspondence.

75.     On or about October 8, 2018, after acknowledging in its Response to Notice of Final Cure Payment that Rojo has paid all pre-petition arrears and was current on his mortgage payments,  Chase sent Rojo a mortgage statement inexplicably stating (1) that the "Current Balance of the Pre-Petition Arrearage" was $6,363.14 and (2) that since the last statement, there was $6,884.09 in "Unapplied Funds."

76.     On October 18, 2018, as result of Rojo's successful completion of his Chapter 13 Plan, the Bankruptcy Court closed Rojo's bankruptcy case. [Dkt. 45].

77.     The Bankruptcy Court did not grant Rojo a discharge pursuant to 11 U.S.C. §1328(a) because Rojo was not eligible for discharge as a result of a previous Chapter 7 discharge.

78.     On November 8, 2018, Chase sent Rojo a mortgage statement that puzzlingly stated **"[a]s of 11/08/18, $11,350.43 is required to bring your loan current**." (emphasis added). The mortgage statement further stated "**[y]ou've missed one or more payments and your mortgage loan is in default**." (emphasis in original)

79.     On November 13, 2018, despite the successful completion of Rojo's Chapter 13 Plan and Chase formally deeming Rojo current on the subject loan, Chase, through its counsel, Codilis & Associates, P.C., sent Rojo a "NOTICE TO OCCUPANT OF PENDING ACQUISITION." The Notice stated, in pertinent part:

> "[t]he mortgage for the property in which you are living is in foreclosure as a result of the property owner's default.  Within the next 60 to 90 days, title to the property is expected to be transferred to [Chase]. Sometime thereafter, ownership of the property will probably be transferred to the Secretary of Housing and Urban Development (HUD)."
>
> ………….
>
> "**YOU MUST REPLY TO THE HUD FIELD OFFICE IN WRITING WITHIN 20 DAYS OF THE DATE ON THIS LETTER OR YOU WILL BE REQUIRED TO MOVE FROM THE PROPERTY BEFORE HUD BECOMES OWNER OF THE PROPERTY**." (emphasis in original)

80.     As demonstrated by the "NOTICE TO OCCUPANT OF PENDING ACQUISITION," Chase brazenly continued to deem the subject loan in default and was taking affirmative steps to foreclose on the subject property.

81.     On November 20, 2018, Chase, through its counsel, Codilis & Associates, P.C., filed a "Notice of Sheriff's Sale of Real Estate" ("Notice of Sale") in the foreclosure case.

82.     The Notice of Sale stated, in pertinent part:

> PUBLIC NOTICE IS HEREBY GIVEN that pursuant to a Judgment of Foreclosure and Sale entered in the above cause on 7/29/2013, the Sheriff of Kendall County, Illinois, will on 12/17/18 at the hour of 8:30 AM Lobby of Kendall County Courthouse, 807 John Street Yorkville, IL 60560, or in

13

a place otherwise designated at the time of sale, County of Kendall and State of Illinois, sell at public auction to the highest bidder for cash, as set forth below, the following described real estate:

[Legal Description of Subject Property]

83.    Rojo was served with the Notice of Sale.

84.    Also on November 20, 2018, less than two months after deeming the Rojo current, Chase sent Rojo a correspondence alleging a "total reinstatement amount" of $10,456.82. The Correspondence stated, in pertinent part:

The total amount due to reinstate the loan is $10,456.82, which is good through 12-16-18. If you can't pay the total amount by that date, the amount you owe may increase because of items such as additional interest, fees and costs (including those related to any foreclosure activity), property inspections and valuations.

| Your reinstatement quote | | |
|---|---|---|
| Payments due | 6/1/18 | $11,350.43 |
| Late charges | | $0.00 |
| Monthly late charge amount | 64.86 | |
| Insufficient funds (NSF) | | $0.00 |
| Other fees | | $0.00 |
| Suspense | | ($1,029.93) |
| Corporate advances | | $15.00 |
| **Incurred costs through** | 12/16/18 | |
| Incurred attorney fees | | $100.00 |
| Incurred attorney costs | | $21.32 |
| **Subtotal** | | **$10,456.82** |
| Estimated attorney fees | | $0.00 |
| Estimated attorney costs | | $0.00 |
| Total estimated amounts | | $0.00 |
| **Total reinstatement amount good through** | 12/16/18 | |
| **Total reinstatement amount** | | **$10,456.82** |

***

6. If we receive payment of $10,456.82, on or before 12-16-18, we'll take action to discontinue the pending foreclosure activity and the foreclosure action initiated on this property will cease, if your account has been referred to foreclosure.

85.    On November 27, 2018, Chase sent Rojo a written correspondence stating, in pertinent part:

14

- We want to help you find a mortgage assistance option;

- **Your mortgage payments are past due**, but we have assistance options that may be available to help bring your loan up to date; and

- We hope this face-to-face meeting will help you find a solution to bring your mortgage up to date.

(emphasis added)

86.    On or about December 8, 2018, Chase sent Rojo a mortgage statement that stated "**[a]s of 12/08/18, $13,007.42 is required to bring your loan current**" and that the "Total payment amount" due was $13,007.42. (emphasis added). The mortgage statement further stated "**[y]ou've missed one or more payments and your mortgage loan is in default**." (emphasis in original). Lastly, the mortgage statement indicated that Chase assessed a $15.00 fee to the subject loan for "inspection costs."[2]

87.    On or about January 9, 2019, Chase sent Rojo a mortgage statement indicating that the "Total payment amount" due was $3,313.98 despite the fact that the monthly mortgage payment at the time was $1,656.99. The mortgage statement further stated that Chase was holding $907.11 in "Unapplied funds" (suspense).

88.    On or about May 8, 2019, Chase sent Rojo a mortgage statement indicating that the "Total payment amount" due was $3,356.26 despite the fact that the monthly mortgage payment at the time was $1,678.13.

89.    Rojo has made every payment that has become due after Chase filed its Response to Notice of Final Cure Payment indicating that the subject loan was current.

90.    Despite deeming the subject loan current on September 18, 2018 through its Response to Notice of Final Cure Payment, Chase has continued to treat the subject loan in default

---

[2] Inspection costs are customarily charged by mortgage servicers when a mortgage loan is in default.

as demonstrated by (1) Chase's failure to dismiss the foreclosure proceedings and cease related

legal processes; (2) the mortgage statements and correspondences it sent Rojo indicating the

subject loan was in default; (3) Chase holding Rojo's mortgage payments in suspense (unapplied

funds) and not applying them immediately after receipt as required by the Truth in Lending Act

("TILA"); and (4) the assessment of "inspection" fees to the subject loan.

## DAMAGES

91.     The sole reason Rojo filed for bankruptcy was to cure the default on the subject

loan and emerge from bankruptcy without the agonizing fear of losing his family home.

92.     Despite making all of his payment as prescribed by his Confirmed Plan, Chase

continued to attempt to collect amounts that were paid through Rojo's bankruptcy.

93.     Chase's failure to honor Rojo's bankruptcy and the Confirmed Plan has

significantly damaged Rojo, who has been left uncertain of when Chase will throw him back in

foreclosure for amounts that were paid through his bankruptcy.

94.     Chase's failure to comply with various provisions of the Bankruptcy Code and the

Bankruptcy Court's orders has caused Rojo significant anxiety, fear, agonizing emotional distress,

mental anguish, and physical illness.

95.     Specifically, Chase's unlawful collection efforts have led Rojo to believe that his

bankruptcy had no legal effect and that Chase was entitled to the amounts that were paid through

his bankruptcy.

96.     As set forth above, Chase repeatedly sent Rojo mortgage statements and

correspondences containing erroneous and false information alleging that the subject loan was in

default when in fact it was current.

97.    Moreover, Chase repeatedly sent Rojo mortgage statements and written correspondences that contained information that blatantly conflicted with information contained in previous correspondences from Chase.

98.    Chase's conduct caused Rojo to be in a perpetual state of confusion and uncertainty.

99.    Moreover, Chase's conduct has caused a significant strain on Rojo's marriage as Rojo was and continues to be perpetually stressed, irritable, and aggravated, thus adversely impacting Rojo's day-to-day interactions with his spouse.

100.    Rojo continues to live in perpetual fear and anxiety of losing his family home as a result of Chase's conduct.

101.    Chase's actions are especially egregious in light of the fact that Chase formally acknowledged that the subject loan was current in Rojo's bankruptcy, only to deem it in default immediately after Rojo's bankruptcy closed.

102.    Moreover, as a result of Chase's misapplication of Rojo's payments, Rojo has lost equity in his home as the misapplication of payments resulted in, *inter alia*, erroneous charges (inspection fees) being assessed to the subject loan, thus increasing the principal balance owed and decreasing the equity in Rojo's home.

## CLASS ALLEGATIONS

103.    Rojo incorporates Paragraphs 1 through 102 as fully set forth herein.

104.    Rojo brings the class allegations and claims pursuant to Fed. R. Bankr. P. 7023 and Fed. R. Civ. P. 23, individually, and on behalf of all others similarly situated ("Putative Classes") defined as follows:

**Completed Bankruptcy Class**

All persons within the Northern District of Illinois (a) that successfully completed a Chapter 13 bankruptcy; (b) in which mortgage arrears to Chase were paid in full; (c) in which after the completion of the Chapter 13 bankruptcy, Chase failed to deem the mortgage loan current and attempted to collect amounts paid through the Chapter 13 bankruptcy at any time in the last four years and through the date of class certification.

**Payment Change Class**

All persons within the Northern District of Illinois (a) whom were debtors in a Chapter 13 bankruptcy proceeding; (b) in which Chase held a security interest in real estate that served as his/her principal residence; (c) in which Chase failed to file a timely Notice of Payment Change as required by Fed. R. Bankr. P. 3002.1(b) at any time in the last four years and through the date of class certification.

105.     The following individuals are excluded from the Putative Classes: (1) any Judge or presiding over this action and members of their families; (2) Chase, Chase's subsidiaries, parents, successors, predecessors, and any entity in which Chase or their parents have a controlling interest and their current or former employees, officers and directors; (3) Rojo's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Putative Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Chase have been fully and finally adjudicated and/or released.

A.     **Numerosity:**

106.     The exact number of members of the Putative Classes are unknown and not available to Rojo at this time, but it is clear that individual joinder is impracticable.

107.     Upon information and belief, Chase owns/services mortgages for thousands of consumers who fall into the definitions of the Putative Classes.

108.     Members of the Putative Classes can be objectively identified from records of Chase to be gained in discovery.

**B.     Commonality and Predominance:**

109.    There are many questions of law and fact common to the claims of Rojo and the Putative Classes, and those questions predominate over any questions that may affect individual members of the Putative Classes.  Common questions for the Putative Classes include, but are not necessarily limited to the following:

A.    Whether Chase changed monthly mortgage payment amounts without providing Notice(s) of Mortgage Payment Change as required by Fed. R. Bankr. P. 3002.1(b);

B.    Whether Chase failed to properly credit payments received pursuant to confirmed Chapter 13 plans;

C.    Whether Chase failed to property apply and/or account for all payments received pursuant to confirmed Chapter 13 plans;

D.    Whether Chase failed to properly adjust principal balances after the successful completion of all payments prescribed for in Chapter 13 plans;

E.    Whether Chase generates inaccurate mortgage statements to consumers during as well as following completed Chapter 13 plans;

F.    Whether Chase attempted to collect arrearages, fees, charges, expenses, escrow, and costs paid through completed Chapter 13 bankruptcy plans;

G.    Whether Chase collected arrearages, fees, charges, expenses, escrow, and costs paid through completed Chapter 13 bankruptcy plans;

H.    Whether Chase systematically misapplies payments received during Chapter 13 bankruptcies; and

I.      Whether Chase systematically attempts to collect amounts already paid through completed Chapter 13 plans.

**C.      Typicality:**

110.    Rojo's claims are typical of members of the Putative Class because Rojo and members of the Putative Classes are entitled to damages as result of Chase's conduct.

**D.      Superiority and Manageability:**

111.    This case is also appropriate for class certification as class proceedings are superior to all other available methods for the efficient and fair adjudication of this controversy.

112.    The damages suffered by the individual members of the Putative Classes will likely be relatively small, especially given the burden and expense required for individual prosecution.

113.    By contrast, a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

114.    Economies of effort, expense, and time will be fostered and uniformity of decisions ensured.

**E.      Adequate Representation:**

115.    Rojo will adequately and fairly represent and protect the interests of the Putative Classes.

116.    Rojo has no interests antagonistic to those of the Putative Classes, and Chase has no defenses unique to Rojo.

117.    Rojo has retained competent and experienced counsel in consumer bankruptcy litigation and consumer class action litigation.

## BASIS FOR SANCTIONS AND RELIEF SOUGHT

## COUNT I

**Civil Contempt of Order Confirming Plan Pursuant to 15 U.S.C. § 105 and §1327(a)
(On behalf of Rojo and Members of the Completed Bankruptcy Class)**

118.    Rojo incorporates Paragraphs 1 through 117 as fully set forth herein.

119.    "The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" *Marrama v. Citizens Bank of Mass*., 549 U.S. 365, 367 (2007).

120.    Provisions of the Bankruptcy Code "balance mortgage lenders' special rights with debtor rights and protections. The primary right provided to debtors is the right to cure arrearages and remain current on mortgage debt so that debtors emerge from Chapter 13 with the promised fresh start." *Rodriguez v. Countrywide Home Loans, Inc*. (*In re Rodriguez*), 2008 Bankr. LEXIS 2646, at *4 (Bankr. S.D. Tex. 2008); *see also* 11 U.S.C. §1322(b)(2) (a Chapter 13 plan may provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending).

121.    Pursuant to 11 U.S.C. §1327(a), the  provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

122.    "Akin to a court-approved contract, a confirmed plan binds all parties by the contract – the debtor, the trustee, and all creditors." *In re McDonald*, 336 B.R. 380, 383 (Bankr. N.D. Ill. 2006) (citing *In re Harvey*, 213 F.3d 318, 321 (7th Cir. 2000)); *see also Beskin v. McPherson*, 350 B.R. 38, 46 (Bankr. W.D. Va. 2006) ("The chapter 13 plan constitutes a new agreement between the debtor and each secured creditor. A debtor's obligations under the plan are substituted for his or her obligations under the original contract with each secured creditor").

123.     "The creditor's obligation [with respect to a confirmed plan] ensure that the debtor can cure arrearages and emerge from bankruptcy no longer facing foreclosure because of default. Accordingly, the creditor must allocate payments pursuant to the plan. Improper allocation of payments deprives a debtor of the promised fresh start and rights provided by §1322(b)(5) to cure arrearages and remain current on mortgage obligations. *Rodriguez,* 2008 Bankr. LEXIS 2646, at *10.

124.     "Thus, the mortgage lender must allocate payments among principal, interest, and arrearages in the manner prescribed by the plan. If a mortgage lender allocates payments that the plan dedicates to pre-petition arrearages to principal and interest or a post-petition charge, without court approval, the mortgage lender violates the terms of the plan and the lender may be subject to liability for violating the order confirming the plan." *Id.* at *10-11.

125.     "Violating a confirmed plan also violates the order confirming it." *In re Ranieri,* 598 B.R. 450, Fn. 3 (Bankr. N.D. Ill. 2019).

126.     "The Seventh Circuit has long recognized the sanctity of confirmation orders." *In re Lasica*, 294 B.R. 718, 721 (Bankr. N.D. Ill. 2003).

127.     Pursuant to §105 of the Bankruptcy Code, the Bankruptcy Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. *See* 11 U.S.C. §105.

128.     "Courts have used §105 to remedy violations of confirmed plans. A bankruptcy court's authority under §105 to enforce its own orders cannot be reasonably questioned." *Rodriguez*, 2008 Bankr. LEXIS 2646, at *62 citing *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000).

129.   "When a confirmed plan has been ignored and undermined, §105 permits the [Bankruptcy Court] to take any action or make any determination necessary to enforce its confirmation order." *Payne v. Mortg. Elec. Registration Sys., Inc.,* 387 B.R. 614, 639 (Bankr. Kan. 2008).

130.   The "bankruptcy court retains jurisdiction to protect the confirmation order, prevent interference with the execution of the plan, and otherwise aid in the plan's operation." *In re Castle Home Builders, Inc.,* 520 B.R. 98, 101 (Bankr. N.D. Ill. 2014).

131.   "Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the Chase into compliance with the court's order, and to compensate the complainant for losses sustained." *Am. Airlines, Inc*., 228 F.3d at 585 quoting *United States. v. United Mine Workers of Am*., 330 U.S. 258, 303-04 (1947).

132.   Here, Rojo's Confirmed Plan expressly states:

(a) *Prepetition defaults*. If the debtor pays the cure amount specified in Paragraph 5 of Section E, while timely making all required postpetition payments, the mortgage will be reinstated according to its original terms, extinguishing any right of the mortgagee to recover any amount alleged to have arisen prior to the filing of the petition.

133.   Despite receiving all payments necessary to cure the pre-petition default on the subject loan and all post-petition mortgage payments, Chase disregarded the bankruptcy process and the Order confirming the Confirmed Plan [Dkt. 26] by (1) attempting to collect pre-petition arrears after Rojo's bankruptcy case was successfully completed; (2) applying Rojo's post-petition payments to pay pre-petition arrears causing Rojo to be in a perpetual state of default on the subject loan; (3) holding Rojo's payments in suspense and not applying the payments immediately after receipt; (4) continuing collection activity after the successful completion of Rojo's bankruptcy case to recover amounts duly paid through Rojo's bankruptcy case; and (5) assessing default  fees

(inspection fees) to the subject loan despite the fact that the subject loan was contractually current as acknowledged by Chase in its Response to Notice of Final Cure Payment.

134.    As set forth above, Rojo was significantly harmed by Chase's failure to comply with and honor this Court's Orders and the bankruptcy process in general.

135.    Upon information and belief, Rojo is one of thousands of victims of Chase's systematic practice of (1) attempting to  collect amounts paid through a Chapter 13 plan  after the successful completion of a Chapter 13 plan; (2) improperly applying post-petition mortgage payments to cure pre-petition defaults, and (3) failing to apply post-petition payments pursuant to the terms of the confirmed Chapter 13 plans, instead holding the payments in suspense.

136.    As a result of Chase's actions, Rojo and other consumers were never properly deemed current on their mortgage loans after the successful completion of their Chapter 13 plans, and thus were denied the fresh start contemplated by the Bankruptcy Code.

137.    As set forth above, Chase systematically defrauds not only consumers that have completed their Chapter 13 plans, but also the Bankruptcy Court.

138.    Accordingly, punitive damages are warranted to punish Chase and to deter future misconduct.

**WHEREFORE**, pursuant to 11 U.S.C. §105 and §1327(a), Rojo respectfully requests that the Court grant Rojo and the Completed Bankruptcy class the following relief:

a.    An order finding Chase in civil contempt of the Court's Order confirming Rojo's Modified Plan [Dkt. 26];

b.    Enjoining Chase from further non-compliance of the Court's Order confirming Rojo's Modified Plan [Dkt. 26];

c.    An order compelling Chase to update its records to reflect that the Rojo is current on the subject loan and to retroactively apply all post-petition payments consistent with the Confirmed Plan and applicable bankruptcy provisions;

24

d.   Awarding Rojo compensatory damages in an amount no less than $100,000.00;

e.   Assessing punitive damages against Chase in an amount no less than $300,000.00 for its contempt of the Court's Order confirming Rojo's Modified Plan [Dkt. 26] and to deter Chase from future non-compliance;

f.   Awarding Rojo his attorney's fees and costs;

g.   An order granting certification of the Completed Bankruptcy class, including the designation of Rojo as the named representative, and the appointment of the undersigned as Class Counsel;

h.   Enjoining Chase from further non-compliance with Orders confirming the Completed Bankruptcy class' Chapter 13 plans;

i.   An order compelling Chase to update its records to reflect and correctly apply all post-petition payments consistent with the Completed Bankruptcy class' confirmed Chapter 13 plans;

j.   Awarding the Completed Bankruptcy class compensatory damages in an amount to be determined at trial after class certification and after members of the Completed Bankruptcy class are identified;

k.   Awarding the Completed Bankruptcy class punitive damages in an amount to be determined at trial after class certification and after members of the Completed Bankruptcy class are identified; and

l.   Any further relief that the Court may deem just and proper.

## COUNT II

**Sanctions for Violations of Federal Rule of Bankruptcy Procedure 3002.1(b)
(On behalf of Rojo and Members of the Payment Change Class)**

139.   Rojo incorporates Paragraphs 1 through 117 as fully set forth herein.

140.   Fed. R. Bankr. P. 3002.1(b) requires the holder of a claim secured by a security interest in the debtor's principal residence  to "file and serve on the debtor, debtor's counsel, and the trustee a notice of any change in the payment amount, including any change that results from an interest rate or escrow account adjustment, no later than 21 days before a payment in the new amount is due." *See* Fed. R. Bankr. P. 3002.1(b).

141.    Chase violated Rule 3002.1(b) by failing to notify the Rojo, Rojo's counsel, and the Chapter 13 Trustee of a payment change during the course of Rojo's bankruptcy. *See* ¶¶45-46, 59-60.

142.    As set forth above, payment on the subject loan changed and Chase failed to notify Rojo, Rojo's counsel, and the Chapter 13 Trustee of the payment change. *Id.*

143.    As set forth above, Chase acknowledged failing to provide notification required by Rule 3002.1(b) in its September 19, 2018 correspondence to Rojo. *See* ¶73.

144.    Pursuant to Rule 3002.1(i), Rojo has a private right of action against Chase for its failure to comply with Rule 3002.1(b).

145.    As set forth above, Rojo was significantly harmed by Chase's non-compliance with Rule 3002.1(b).

146.    Upon information and belief, Rojo is one of thousands of victims of Chase's systematic practice of changing mortgage payments without proper notification.

147.    As a result of Chase's failure to comply with Rule 3002.1(b), Rojo and other consumers were thrown into a perpetual state of confusion and uncertainty as to the status of their mortgage loans.

148.    Moreover, upon information and belief, many consumers defaulted on their mortgage loans due to Chase's concealment of the payment changes.

**WHEREFORE,** pursuant to Rule 3002.1(i), Rojo respectfully requests that the Court grant Rojo and the Payment Change Class the following relief:

    a.    Awarding Rojo compensatory damages in an amount no less than $20,000.00 for Chase's non-compliance with Rule 3002.1(b);

    b.    Assessing punitive damages against Chase for its non-compliance with Rule 3002.1(b) with respect to Rojo in amount no less than $100,000.00 to deter future non-compliance;

    c.      Awarding Rojo his attorney's fees and costs;

    d.      An order granting certification of the Payment Change Class, including the designation of Rojo as the named representative, and the appointment of the undersigned as Class Counsel;

    e.      Enjoining Chase from further non-compliance with Rule 3002.1(b);

    f.      Awarding the Payment Change Class compensatory damages in an amount to be determined at trial after class certification and after members of the Payment Change Class are identified;

    g.      Awarding the Payment Change Class punitive damages in an amount to be determined at trial after class certification and after members of the Payment Change Class are identified; and

    h.      Any further relief that the Court may deem just and proper.

Dated: September 24, 2020

Respectfully Submitted,

/s/ *Mohammed O. Badwan*

Mohammed O. Badwan, Esq.
*Counsel for Debtor*
Sulaiman Law Group, Ltd.
2500 S. Highland Ave.
Suite 200
Lombard, IL 60148
Phone (630) 575-8180
Fax: (630) 575- 8188
mbadwan@sulaimanlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 24, 2020, a copy of the foregoing was filed with the

Clerk of the Court using the CM/ECF system, which will provide notification of such filing to all

counsel of record.

/s/ <u>*Mohammed O. Badwan*</u>
